UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 11-CR 11 00921 |
| Plaintiff, | ) **I N D I C T M E N T** |
| v. | ) |
| DALTON CHRISTIAN MENZIES, aka "Wolf," and ANTOINE MICHAEL MERCADEL, aka "Catt," aka "Tony," | ) [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 201(b)(1)(C): Bribing a Public Official; 18 U.S.C. §§ 1791(a)(2),(b)(5): Possessing Contraband in Prison; 18 U.S.C. § 2(a): Aiding and Abetting] |
| Defendants. | ) |

The Grand Jury charges:

<u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this indictment:

A.  <u>THE DEFENDANTS</u>

1.  Defendant DALTON CHRISTIAN MENZIES, also known as ("aka") "Wolf" ("MENZIES"), was a federal inmate housed at the Federal Correctional Institution LOF (low-level facility) within the Federal Correctional Complex at Lompoc, California (hereinafter referred to as "FCI Lompoc").

2. Defendant ANTOINE MICHAEL MERCADEL, aka "Catt," aka "Tony" ("MERCADEL"), was a federal inmate housed at FCI Lompoc.

B. **RELEVANT POLICIES AND PROCEDURES**

**The Lawful Duty of BOP Employees**

3. The United States Department of Justice, Federal Bureau of Prisons ("BOP") has adopted "Standards of Employee Conduct," effective February 5, 1999 (hereinafter referred to as "BOP Employee Standards"), that prohibit, in part, a BOP employee from:

   a. Introducing any contraband into or upon the grounds of any federal penal or correctional institution without the Warden's knowledge and consent;

   b. Offering or giving any article, favor, or service not specifically authorized by the BOP employee's duties, to an inmate, former inmate, or such inmate's family members or associates; or

   c. Accepting any gift, personal service or favor from an inmate or former inmate, or an inmate's family members or associates.

4. Attachment A to the BOP's Employee Standards further prohibit, in part, any BOP employee from:

   a. Receiving any gift, favor, or bribe in connection with the official's duties;

   b. Accepting any gift or favor from an inmate or former inmate; and

   c. Aiding or abetting an inmate to violate or attempt

2

to violate any law, rule, regulation or commission of any prohibited act.

Contraband Within a BOP Penal & Correctional Institution

5. The BOP Standards of Employee Conduct defines contraband as any material that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the federal penal or correctional institution. Contraband includes, but is not limited to, letters, stamps, money, paper, implements, writing material, messages, instruments, photographic equipment, computer software, recording devices, and cellular phones.

6. The BOP, Federal Correctional Complex, Lompoc, California's "Complex Supplement," effective February 20, 2009, directs BOP inmates housed at FCI Lompoc, in part, that unless an article is issued by staff, purchased in the commissary, or received through approved channels, it is considered contraband. Contraband also includes normally approved items that have been altered or enhanced for use other than their intended purpose.

C. INCORPORATION BY REFERENCE

7. These introductory allegations are hereby incorporated by reference into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

A. OBJECTS OF THE CONSPIRACY

Beginning in or about April 2010, and continuing to in or around July 2010, in Santa Barbara and Los Angeles Counties, within the Central District of California, and elsewhere, defendants MENZIES and MERCADEL, together with others known and unknown to the Grand Jury, knowingly combined, conspired and agreed:

1. To directly and indirectly, corruptly give, offer and promise a thing of value, that is, approximately $60,000, to a Correctional Officer and Senior Officer Specialist, a public official employed by the BOP, an agency of the United States Department of Justice, with the intent to induce such public official to do an act in violation of the public official's lawful duty, in violation of Title 18, United States Code, Section 201(b)(1)(C); and

2. To obtain a prohibited object, specifically, a laptop computer, an object that threatens the order, discipline, and security of the prison, while being federal inmates at the Federal Correctional Institution LOF (low-level facility) within the Federal Correctional Complex at Lompoc, California ("FCI Lompoc"), in violation of 18 U.S.C. §§ 1791(a)(2), (b)(5).

B. THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

4

1. Defendant MENZIES and defendant MERCADEL, together with others known and unknown to the Grand Jury, would devise a plan to bribe a BOP Correctional Officer to smuggle a laptop computer into FCI Lompoc to be used in the commission of fraud-related crimes by inmates incarcerated at FCI Lompoc.

2. Defendant MENZIES would instruct and cause others to instruct V.M., S.B., and unindicted co-conspirator T.M. to obtain a laptop computer with specified software and wireless internet capabilities.

3. Defendants MENZIES and MERCADEL would direct and cause others to direct V.M., S.B., and unindicted co-conspirator T.M to purchase a laptop computer with the specifications that would be needed to conceal the laptop computer within FCI Lompoc, including that the laptop computer be small in size and remain quiet while in use.

4. Defendant MERCADEL and S.B. would attempt to recruit a BOP Correctional Officer employed at FCI Lompoc to bring a laptop computer into FCI Lompoc in exchange for a money bribe.

5. Defendant MENZIES would direct unindicted co-conspirator T.M. to transfer monies between bank accounts held in the name of "Company HCG," in order to fund and facilitate the purchase of the laptop computer.

6. Defendant MERCADEL would direct V.M. to accept wire transfers from unindicted co-conspirator T.M., in order to purchase a laptop computer and transport it to Lompoc, California.

7. Defendant MERCADEL would direct unindicted co-conspirators D.M., A.M., aka "Yoyo," C.J., aka "C," and others known and unknown to the Grand Jury, to receive and retrieve a UPS package containing a laptop computer.

8. Defendant MERCADEL would direct unindicted co-conspirator C.J. to deliver the package containing a laptop computer to S.O., who, unbeknownst to defendants MERCADEL and MENZIES, was a confidential source posing as S.B.'s cousin.

9. Defendants MENZIES and MERCADEL and S.B. would promise to pay a BOP Correctional Officer ("CO") employed at FCI Lompoc $100,000 to smuggle a laptop computer inside FCI Lompoc.

10. Defendant MENZIES would direct S.B. and unindicted co-conspirator T.M. to mail a $60,000 cashier's check to CS #2.

11. Defendants MENZIES and MERCADEL would offer to pay a bribe in the amount of $60,000 to a BOP Correctional Officer employed at FCI Lompoc in order to corruptly influence the BOP Correctional Officer to bring a laptop computer into FCI Lompoc.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants MENZIES and MERCADEL, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

Obtaining Pre-paid Wireless Internet Access for a Laptop Computer

1. On or about May 27, 2010, in an email, defendant MENZIES directed unindicted co-conspirator T.M. to research how

6

to purchase Virgin Mobile's Broadband2Go's wireless data packages.

2. On or about May 29, 2010, in an email, defendant MENZIES directed unindicted co-conspirator T.M. to research whether Broadband2GO Modems were sold only at Best Buy and whether they were compatible with Windows 7.

3. On or about dates unknown, in handwritten notes, defendant MENZIES directed S.B. and others known and unknown to the Grand Jury, to obtain an "'ultra-portable laptop' or 'notebook' or 'hi-end netbook'" that met certain computer software and hardware specifications, including that the laptop computer come "pre-installed with Windows 7 Professional," operate silently, and have "a keyboard that clicks softly" so as to make "as little noise as possible."

4. On or about June 1, 2010, using coded language in an email, defendant MENZIES gave unindicted co-conspirator T.M. defendant MERCADEL's federal inmate registration number, BOP Reg. No. XXXXX-112.

Directions to Purchase and Transport A Laptop Computer

5. On or about June 10, 2010, unindicted co-conspirator T.M. sent a Western Union money order transfer for $6,000 to V.M. in Jacksonville, Florida.

6. On or about June 11, 2010, using coded language in a telephone call, defendant MERCADEL instructed V.M. to pick up $3,000 at two different Western Union locations.

7. On or about June 16, 2010, using coded language in a

telephone call, defendant MERCADEL directed V.M. to purchase a laptop computer that was "thin" and had a USB modem.

8. On or about June 19, 2010, using coded language in an email, defendant MENZIES instructed unindicted co-conspirator T.M. to wire $2,000 to V.M. in Florida.

9. On or about June 19, 2010, using coded language in an email, defendant MENZIES told unindicted co-conspirator T.M. that "Valerie" in Florida was the same person who received the $6,000 previously.

10. On or about June 22, 2010, from League City, Texas, unindicted co-conspirator T.M. sent a Western Union money order transfer for $2,000 to V.M. in Jacksonville, Florida.

11. On or about June 22, 2010, using coded language in a telephone call, defendant MERCADEL told V.M. that a $2,000 Western Union money transfer was waiting for her.

The Laptop Computer

12. On or about June 17, 2010, in an email, defendant MENZIES directed unindicted co-conspirator T.M. to research the computer and consumer electronic brands Best Buy carried.

13. On or about June 27, 2010, defendant MENZIES visited unindicted co-conspirator T.M. at FCI Lompoc.

14. On or about June 27, 2010, at a Best Buy in Santa Maria, California, using Company HCG's Wachovia Visa CheckCard number XXXX XXXX XXXX 5012, unindicted co-conspirator T.M. purchased an ALIENWARE laptop computer bearing Service Tag (S/N): JGB23M1 and other accessories for $1,358.77.

15. On or about June 28, 2010, at a Best Buy in Goleta, California, using Company HCG's Wachovia Visa CheckCard number XXXX XXXX XXXX 5012, unindicted co-conspirator T.M. paid $97.86 to purchase Windows Professional 7.

The Transfer of the Laptop Computer

16. On or about June 30, 2010, using coded language in a telephone call, defendant MERCADEL told unindicted co-conspirator D.M. that an overnight package addressed to D.M. was mailed to unindicted co-conspirator A.M.'s house at "apartment number 160."

17. On or about July 3, 2010, using coded language in a telephone call, defendant MERCADEL asked unindicted co-conspirator A.M. to confirm if unindicted co-conspirator A.M. had a package containing a laptop computer and a charger.

Contacting a BOP Correctional Officer

18. On or about July 4, 2010, at FCI Lompoc, defendant MERCADEL told a BOP Correctional Officer employed at FCI Lompoc (hereinafter referred to as "CO C") that he had a plan to make "serious money" that did not involve drugs or weapons.

Delivering a Laptop Computer to CS #2

19. On or about July 9, 2010, using coded language in a telephone call, defendant MERCADEL told unindicted co-conspirator D.M. that one of his "white boy homies" would call to pick up the UPS package.

20. On or about July 9, 2010, using coded language in a telephone call, defendant MERCADEL directed unindicted co-conspirator C.J. to give the package containing the laptop

computer to CS #2.

21. On or about July 9, 2010, in a telephone call, defendant MERCADEL directed unindicted co-conspirator C.J. to call CS #2 at telephone number XXX-XXX-2803.

22. On or about July 9, 2010, at defendant MERCADEL'S direction, unindicted co-conspirator C.J. gave CS #2 a UPS box bearing UPS tracking number 1Z 61W 181 13 6991 6768 and containing an ALIENWARE laptop computer bearing Service Tag (S/N): JGB23M1.

The Offer to Bribe a BOP Correctional Officer

23. On or about July 10, 2010, at FCI Lompoc, defendant MERCADEL offered to pay CO C $100,000 in cash in exchange for CO C bringing a laptop computer into FCI Lompoc.

24. On or about July 10, 2010, defendant MERCADEL, S.B., and CO C met at FCI Lompoc.

25. On or about July 10, 2010, S.B. handed CO C a piece of paper with the name "Catt," and CS #2's contact name and telephone number, XXX-XXX-2803.

26. On or about July 14, 2011, using coded language in a telephone call and in an email, defendant MENZIES directed unindicted co-conspirator T.M. to transfer $60,000 to the Wachovia Bank Custom Business Checking account number XXXXXXXXX3912 in the name of Company HCG from Company HCG's E*TRADE Financial Investment account number XXXX-2921.

27. On or about July 15, 2010, unindicted co-conspirator T.M. transferred $60,000 to Wachovia Bank Custom Business

Checking account number XXXXXXXXX3912 in the name of Company HCG from Company HCG's E*TRADE Financial Investment account number XXXX-2921.

28. On or about July 15, 2010, unindicted co-conspirator T.M. purchased a $60,000 Wachovia Bank Cashier's Check bearing number 1700989020 made payable to CS #2 listing Company HCG as the remitter.

29. On or about July 15, 2010, unindicted co-conspirator T.M. mailed a UPS Next Day Air package bearing UPS tracking number 1Z 61W 181 01 3748 5842 to CS #2 at the Embassy Suites, 1117 N H. Street, Lompoc, CA 93436-8115.

30. On or about July 15, 2010, using coded language in a series of voice mail messages and telephone calls, unindicted co-conspirator T.M. told CS #2, that she was "Dalton's wife" and that a $60,000 cashier's check payable to CS #2, would arrive the next day via a UPS package, tracking number "1Z61W1810137485842," at the Embassy Suites in Lompoc, California.

31. On or about July 15, 2010, using coded language in an email, unindicted co-conspirator T.M. advised defendant MENZIES that the $60,000 was sent and would arrive the next day.

32. On or about July 16, 2010, at FCI Lompoc, defendant MENZIES told CO C that $60,000 in cash was at the hotel waiting for CO C, and that defendant MENZIES would give CO C an additional $40,000 in cash after the laptop computer was brought into FCI Lompoc.

## COUNT TWO

[18 U.S.C. § 201(b)(1)(C), 2(a)]

Beginning in or about April 2010, and continuing to in or abut July 2010, in Santa Barbara and Los Angeles Counties, within the Central District of California, defendants DALTON CHRISTIAN MENZIES, also known as ("aka") "Wolf" ("MENZIES"), and ANTOINE MICHAEL MERCADEL, aka "Catt," aka "Tony" ("MERCADEL"), and others known and unknown to the Grand Jury, aiding and abetting one another, directly and indirectly, corruptly gave, offered, and promised a thing of value, that is, approximately $60,000, to a Correctional Officer and Senior Officer Specialist, a public official employed by the Federal Bureau of Prisons, an agency of the United States Department of Justice, with the intent to induce such public official to do an act in violation of the public official's lawful duty. Specifically, defendants MENZIES and MERCADEL caused a $60,000 cashier's check to be sent to CS #2 for delivery to a public official as payment to bring a laptop computer into the Federal Correctional Institution LOF (low-level facility) located within the Federal Correctional Complex at Lompoc, California.

COUNT THREE

[18 U.S.C. §§ 1791(a)(2), (b)(5)]

Beginning in or about April 2010, and continuing to in or around July 2010, in Santa Barbara and Los Angeles Counties, within the Central District of California, and elsewhere, defendants DALTON CHRISTIAN MENZIES, also known as ("aka") "Wolf" ("MENZIES") and ANTOINE MICHAEL MERCADEL, aka "Catt," aka "Tony" ("MERCADEL"), being federal inmates at the Federal Correctional Institution LOF (low-level facility) within the Federal Correctional Complex at Lompoc, California ("FCI Lompoc"), attempted to obtain a prohibited object, specifically, a laptop computer, an object that threatened the order, discipline, and security of the prison.

A TRUE BILL

/s/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

Dorothy C. Kim, Dep. Chief, Crim. Div. FOR:
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section

ELISA FERNANDEZ
Assistant United States Attorney
Public Corruption & Civil Rights Section

13