1                 UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                          ---

4              THE HONORABLE DALE S. FISCHER

5          UNITED STATES DISTRICT JUDGE PRESIDING

6

7    United States of America,        )

8                      Plaintiff,     )

9                                     )

10   vs.                              )   Case No. CR 11-921-DSF

11                                    )

12   Antoine Michael Mercadel,        )

13                      Defendant.    )

14   _____  )

15

16

17            REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                      *Sentencing*

19                 Los Angeles, California

20                 Monday, March 4, 2013

21

22   Pamela A. Batalo, CSR, FCRR, RMR
     Official Reporter
23   Roybal Federal Building
     255 East Temple Street
24   Room 181-I
     Los Angeles, California  90012
25   (213) 687-0446

```
 1   APPEARANCES:

 2

 3     FOR THE GOVERNMENT:     OFFICE OF THE UNITED STATES ATTORNEY

 4                             BY:  ELISA FERNANDEZ

 5                                  ASSISTANT UNITED STATES ATTORNEY

 6                             312 N. SPRING STREET

 7                             LOS ANGELES, CA 90012

 8

 9     FOR DEFENDANT:          LAW OFFICES OF ANTHONY EAGLIN

10                             BY:  ANTHONY EAGLIN

11                             ONE WILSHIRE BUILDING

12                             624 SOUTH GRAND AVENUE 22ND FLOOR

13                             LOS ANGELES, CA 90017

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | Los Angeles, California, Monday, March 4, 2013 |
| 2 | 9:07 a.m. |
| 3 | -oOo- |
| 4 | THE CLERK:  Calling Item No. 6, CR 11-921-DSF, *United* |
| 5 | *States of America vs. Antoine Michael Mercadel*. |
| 6 | MS. FERNANDEZ:  Good morning, your Honor.  Elisa |
| 7 | Fernandez on behalf of the United States.  With me at counsel |
| 8 | table is FBI Special Agent Lucas Bauers pams. |
| 9 | MR. EAGLIN:  Good morning, your Honor.  Anthony Eaglin |
| 10 | on behalf of Antoine Michael Mercadel, who is present in court |
| 11 | and in custody. |
| 12 | THE COURT:  Good morning. |
| 13 | This is the time set for sentencing.  I've read and |
| 14 | considered the presentence report and the addendum.  I've also |
| 15 | read and considered the various objections and position papers |
| 16 | filed by the parties. |
| 17 | Mr. Eaglin, have you had enough time to review those |
| 18 | documents and review them with Mr. Mercadel? |
| 19 | MR. EAGLIN:  Yes, your Honor. |
| 20 | THE COURT:  Did you explain the contents of those |
| 21 | documents to him? |
| 22 | MR. EAGLIN:  Yes, I have. |
| 23 | THE COURT:  Do you have any concerns about his ability |
| 24 | to understand them? |
| 25 | MR. EAGLIN:  No, I do not. |

4

1        THE COURT:  Mr. Mercadel, did you get those documents?

2        THE DEFENDANT: Yes, ma'am.

3        THE COURT:  Did you read them?

4        THE DEFENDANT: Yes, ma'am.

5        THE COURT:  Do you need any more time to read them?

6        THE DEFENDANT:  No, ma'am.

7        THE COURT:  Did Mr. Eaglin explain them to you?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Did you understand them?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Mr. Eaglin, do you want to contest or

12  change anything in the documents, other than what was submitted

13  in writing?

14        MR. EAGLIN:  No, your Honor.

15        THE COURT:  Is there anything you would like to

16  present in mitigation?

17        MR. EAGLIN:  Your Honor, in terms of the paperwork

18  that we filed, the probation officer has determined that the

19  defendant has an offense level of 17, category 3, with a

20  guidelines range of 30 to 37 months.  With that calculation, the

21  probation officer recommended to the Court that Mr. Mercadel be

22  sentenced at the low end of the range, which is 30 months.  The

23  probation officer also recommended to the Court that the Court

24  impose this sentence concurrently to the sentence that he is

25  presently serving.

```
 1            THE COURT:  Actually, did you see the addendum?

 2            MR. EAGLIN:  Yes, your Honor, I did -- I did see the

 3   addendum, and -- and --

 4            THE COURT:  Not that it's relevant.  I wasn't going to

 5   sentence him concurrently, no matter what the probation officer

 6   said.

 7            MR. EAGLIN:  Your Honor, I just mention that to, you

 8   know -- to highlight that the probation officer felt that

 9   Mr. Mercadel has been in custody for the past 20 years; that a

10   30-month sentence was sufficient, but not greater than

11   necessary, and within the guideline range that she calculated.

12            We have taken exception to the probation officer's

13   calculation, and we highlighted those in our objections and

14   papers before the Court.

15            In particular, the probation officer gave a -- a

16   four-level enhancement because the paperwork indicated that

17   Mr. Mercadel advised law enforcement that he had hoped to

18   receive some $20,000 from his co-conspirator, which was

19   Mr. Menzies in this particular case.

20            It's our position, your Honor, in our papers, our

21   objections, and our reply to the government's objections to our

22   objections is that we don't think that that is calculatable

23   loss.

24            The exchange of funds between the co-conspirators

25   themselves is not the type of loss that is contemplated by the
```

1    guidelines.   2C1.1 says that any benefit obtained by the public

2    official or others acting with the public official is -- does

3    not encompass what -- the exchange of funds between the

4    co-conspirator.

5            I think that particular provision, your Honor, deals

6    specifically with the public official, or if the public official

7    has someone specifically working with him, either directly or

8    indirectly, or if the public official has someone, a friend or

9    family member or an associate who may benefit somewhat as a

10   result of this bribe.   I think that is the contemplation of

11   Section 2C1.1.

12           The probation officer takes the position and reads it

13   extremely too broad to include something like well, since the

14   defendant was part of the people that were doing the bribing,

15   they were acting with the public official.

16           We totally disagree.   Literally reading the conditions

17   under which a loss can be calculated, we don't think that if

18   Mr. Mercadel was hoping to receive a few dollars from his

19   co-defendant, that is not calculatable loss.

20           We ask the Court, and the probation officer agreed,

21   that Mr. Mercadel's loss should be limited to the amount that

22   was agreed to in the plea agreement, at least $2,500.   That was

23   the amount that all of the parties had initially indicated was

24   to be the bribed amount.

25           The Court recalls the exhibits that I attached to my

1  reply to the government's opposition.  All the indications were
2  that the bribed amount was $2,500.
3       Now, Mr. Mercadel received some $8,000 initially.
4  That was way in June.  And the purpose of that $8,000 was not
5  for Mr. Mercadel's fee for being involved in this conspiracy.
6  It was part of the broad conspiracy for -- there was a
7  particular person in Florida who was supposed to make the
8  purchase of the equipment.  The amount of money was for the
9  purchase of the equipment, for travel arrangements, and for the
10  payment of the bribe.
11       I would ask the Court to find that the amount of loss
12  in this particular case, the $2,500, the Court should not
13  include as calculatable loss the -- any amount that Mr. Mercadel
14  had hoped to receive or may have been promised by his
15  co-defendant as he was not acting with the public official but
16  acting with the co-defendants.
17       We also ask the Court to grant Mr. Mercadel a minor
18  role in this case.  Now, it is undisputed that Mr. Mercadel's
19  sole role in this offense was to identify a correction officer
20  who would accept a bribe and make an introduction between
21  Menzies, the moneyman, and the correction officer.
22       Mr. Mercadel did that.  And after Mr. Mercadel did
23  that, the evidence before the Court is -- is -- is such that
24  Menzies specifically wanted Mercadel left out of the loop.  He
25  had served his purpose.  When Mr. Menzies and the correctional

1   officer had made a connection, Mr. Mercadel was not involved in

2   the negotiation of the bribe amount.  Mr. Mercadel was not

3   involved in any further discussion.

4           Mr. Mercadel was involved in the potential transfer of

5   the contraband because law enforcement was particularly

6   involved, and we had SB, the informant, who was specifically

7   being instructed on a daily basis by law enforcement to make

8   sure that Mr. Mercadel and Mr. Menzies were working together

9   and -- and because of law enforcement's involvement, it -- it

10  somewhat compelled Mr. Mercadel's continued participation.  But

11  that participation was toward the movement of the contraband and

12  not the negotiation of the bribed amount or forwarding any money

13  to law enforcement.

14          And because of Mr. Mercadel's limited involvement,

15  except for law enforcement compelled participation further, we

16  would ask that the Court consider that Mr. Mercadel is not a

17  minimal participant but a minor participant, one that is

18  deserving of a two-level reduction.

19          We also argued, your Honor, that the probation officer

20  asked for a four-level enhancement for -- two-level enhancement.

21  I'm sorry.  They asked for enhancement because the public

22  official involved a sensitive position.

23          Now, the probation officer said he's not a high-level

24  ranking official that would be deserving of this enhancement,

25  but because he occupied a sensitive position.  Now, the

1    guidelines identify particular individuals deserving of such a

2    sensitive position, like a juror or a law enforcement -- a

3    police officer.  It did not make any mention of a correctional

4    officer.  Ninth Circuit has not specifically addressed whether a

5    correctional officer per se occupies a sensitive position

6    deserving of a two-level enhancement.  Other circuits in

7    unpublished decisions have ruled that it is.

8           I would ask the Court to consider the facts of this

9    case, the correctional officer who, at a correctional

10   institution, is little more than a security guard whose sole

11   role is to, you know, enforce the -- the regulations of the

12   prison.  They do not involve a sensitive position.  I would ask

13   that the Court find that they do not occupy a sensitive

14   position.

15          With those comments, your Honor, we would submit the

16   matter.  We would ask the Court to do the appropriate

17   calculation, and we would ask that the Court consider the

18   3553(a) factors that I've mentioned in my papers.  I'm not going

19   to bore the Court with them further.  And ask that the Court

20   impose an appropriate sentence in this particular case.

21          THE COURT:  Thank you.

22          Mr. Mercadel, is there anything you would like to say

23   before I sentence you?

24          THE DEFENDANT:  No, ma'am.

25          THE COURT:  Ms. Fernandez?

1           MS. FERNANDEZ:  Your Honor, just briefly to recap, the

2    government believes that the evidence overwhelmingly shows that

3    Mr. Mercadel did not play a minor role in this offense.  Through

4    his own statements and actions, he served two key purposes in

5    the conspiracy.

6           First, was essentially to make the connection with a

7    correctional officer, who they believe was in a position to be

8    bribed, and threaten both the security of the prison, as well as

9    with the intent to possibly perpetuate other crimes in terms of

10   smuggling in a laptop computer.

11          Secondly, your Honor, he played a crucial role in more

12   than one time frame of the conspiracy to obtain the laptop

13   computer and actually transfer it to an individual who could

14   deliver it.  The initial conversations with the individual out

15   of state with the initials VN showed that he was integrally

16   involved in obtaining the laptop computer, and it was his

17   responsibility in the conspiracy to ensure that it was

18   transferred from an out-of-state location to an individual who

19   was in a position of trust to give it to the public official.

20          When that fell through, his role in the conspiracy did

21   not stop.  In fact, he assumed that position by essentially

22   arranging for family members to negotiate the transfer from an

23   individual related to Mr. Menzies and again transfer that laptop

24   computer to an individual of public trust with the correctional

25   officer.

1    As to the issue of sensitive position, your Honor, as
2    set forth in the government's position papers, this individual
3    not only occupies, by virtue of his position, a sensitive
4    position in that he is responsible for the security and safety
5    of hundreds of individuals within the prison system itself but
6    has statutory authority to both arrest within and outside the
7    prison with limited circumstances, and as set forth in the
8    guidelines, the sentencing guidelines 2C1.1, that falls squarely
9    within a law enforcement position paper -- position which would
10   be a sensitive position, your Honor.

11    Lastly, as to amount of the bribe, your Honor, the
12   PSR correctly noted that there is more than one way to calculate
13   the bribe in this case.  The government has stated that there is
14   no negotiations or facts or conversations that indicate that
15   Mr. Mercadel knew that the amount initially offered was 60,000,
16   but he did know it was a hundred thousand dollars.  And he knew,
17   he was present during those negotiations on two separate
18   occasions.

19    His statements that he acted in shock are in direct
20   contradiction to his role in the offense.  He negotiated himself
21   a bribe, payment, a return of $20,000, your Honor.  He actually
22   received $8,000, and as the facts set forth in this case, he
23   never paid for any of the costs of the laptop computer.  That
24   money was given to him through a person of trust and remained
25   with him and that individual.

1    Lastly, your Honor, the government would point to

2    application note 7, your Honor, of the sentencing guidelines,

3    and I would just briefly read that:

4         *For the purposes of deterrence purposes, the*

5    *punishment should be commensurate with the gain to the payor or*

6    *the recipient of the bribe, whichever is greatest.*

7         That is essentially the government's position.  That

8    the gain that he stood to gain was $20,000.  At a minimum, he

9    received the 8,000, and that he was present and had enough

10   indicia and foreseeability to know that it would be about a

11   hundred thousand dollars, your Honor.

12        THE COURT:  And why are you recommending 46 months?

13        MS. FERNANDEZ:  Excuse me, your Honor?

14        THE COURT:  Why are you recommending 46 months?

15        MS. FERNANDEZ:  May I have a moment, your Honor?

16        THE COURT:  That's the low end.  I'm asking why you

17   are recommending the low end.

18        MS. FERNANDEZ:  Your Honor, I think it's

19   appropriate -- the government did reserve the right to argue for

20   a midpoint sentence.  If the Court applies, as the government

21   believes, both the sensitive position as well as the full extent

22   of the bribe that was foreseeable to him given the information

23   he had even before the final bribe negotiations were made, the

24   government believes that that accurately captures his role in

25   the offense.

1    In addition to that, your Honor, if the Court imposes

2    the low-end sentence, the Court would essentially be concurring

3    with the government that a minor role is not applicable in this

4    case and therefore would actually capture his role in that it

5    was integral to the offense and believes that that would be

6    sufficient deterrence, given the nature of the crime, because

7    the sentence would be consecutive to whatever sentence he served

8    and at this point has finished serving at the time that he

9    committed the offense, your Honor.

10    THE COURT:  All right.  Thank you.

11    The defendant raises several objections to the

12    presentence report.  First, he contends that the PSR improperly

13    calculates the loss attributable to him.  The defendant and the

14    probation officer agree the Court should look to Sentencing

15    Guideline Section 2C1.1(b)(2).

16    The Court agrees with the government that Mr. Mercadel

17    either knew the custodial officer was offered a $100,000 bribe

18    during the course of the conspiracy, even if he did not offer it

19    himself, or at the very least, it was reasonably foreseeable to

20    Mr. Mercadel the custodial officer would receive a bribe of more

21    than $70,000, which is the cutoff point for the enhancement.

22    The report of Mercadel's own interview with the FBI

23    indicates that Mercadel introduced B to the CO, and B offered

24    the CO $100,000 on July 10, 2010.  That Mercadel allegedly was

25    shocked when he heard the offer is irrelevant, and that's -- he

1  knew the offer was being made during the course of the

2  conspiracy.  And, in fact, he goes on to relate that B's father

3  was supposed to give the CO the laptop and the money.

4        The statements from Mercadel himself as related in the

5  302 are clear and convincing evidence as to Mercadel's

6  knowledge.

7        The probation officer suggests it is not clear from

8  the report of the interview when Mercadel learned of that

9  amount.  While it might be argued that Mercadel's statement is

10  ambiguous, it seems clear to me that Mercadel is admitting he

11  knew at the time the offer was made by B.

12        The CO's statements, both as written by the CO himself

13  and as related to the FBI, are consistent with that

14  interpretation of Mercadel's admission.  At DM275, the 302

15  reflects the CO's statement that during a meeting on July 10,

16  2010, there was a discussion of the $100,000 payment.  At

17  DM276, the 302 relates that the CO told B and Mercadel that if

18  there was not $100,000 in cash with the laptop, the CO would

19  walk away.

20        The government also provided an

21  excruciatingly-detailed statement dated July 18, 2010, written

22  by the CO.  His statement at DM1309 that on July 10, 2010,

23  Mercadel explained to the CO that the CO would get $100,000 in

24  cash is consistent with Mercadel's own statement to the FBI and

25  the CO's statements to the FBI.

According to the CO's statement, both as reflected in the 302 and as personally written by the CO, Menzies did not tell the CO not to have further contact with Mercadel until July 16, six days after Mercadel participated in a discussion about the $100,000 with the CO.

In rebuttal, defense provides nothing but counsel's interpretation, which is good advocacy but is not evidence.

The Court also agrees that in light of the fact that Mercadel was to receive $20,000 for what he now argues was a minor role in the conspiracy, it was entirely foreseeable that the long-time CO, who would lose his career and end up in prison if caught, would have to be offered something much more significant than the 20,000 Mercadel was to get.

In light of the previous finding, however, this issue is moot, and the defense's other arguments on the loss issue are simply legally incorrect.

Defendant's argument concerning role also fails.  Here the burden is on the defendant, but Mercadel played an integral role.  He was the one who identified the CO and approached him to participate in the conspiracy.  He was also involved in the actual effort to get the laptop to the prison.  And this is not one of the exceptional circumstances in which a defendant should get a role adjustment.

Defendant argues that the CO in this case was not in a sensitive position within the meaning of Guideline Section

1   2C1.1(b)(3).  The Court disagrees.  Application note 4b  states

2   that law enforcement officers are in a sensitive position.  As

3   the Ninth Circuit law pointed out by defense counsel makes

4   clear, more analysis is needed.

5        The government has provided evidence that this senior

6   correctional officer did, indeed, take an oath and that persons

7   in that position have substantial responsibility and exercise

8   substantial decision-making authority, and the correctional

9   officer also has the power to arrest in certain situations.

10        I find the report to be accurate and correct, except

11  for the changes previously noted, and I otherwise adopt the

12  report and the calculation of the advisory sentencing

13  guidelines.  The advisory guidelines are the starting point and

14  the initial benchmark in the Court's analysis.

15        I'm consulting and taking into account the

16  November 2012 edition of the guidelines.  The total offense

17  level is 21.  The criminal history category is 3.  The guideline

18  range for custody is 46 to 57 months.  The range for supervised

19  release is one to three years.  The special assessment to the

20  Crime Victims Fund is $100.

21        In making an individualized determination based on the

22  facts, I'm also considering the factors described in

23  18 United States Code Section 3553(a), especially, but not

24  exclusively, the nature and circumstances of the offense and the

25  history and characteristics of the defendant, the need for the

1    sentence to reflect the seriousness of the offense, to promote

2    respect for the law and provide just punishment, to afford

3    adequate deterrence for criminal conduct, and to protect the

4    public from further crimes of the defendant.

5         I'm considering the kinds of sentences available and

6    the kinds of sentence and sentencing range established for the

7    applicable category of offense committed by the applicable

8    category of defendant.

9         The nature and circumstances of the offense are

10   somewhat aggravating.  The Court generally sees bribery cases

11   where the defendant has attempted to gain some benefit for

12   himself or his family, but not necessarily to the detriment of

13   others.  Here it was obvious that Menzies was willing to spend

14   substantial sums to obtain a computer with which he would

15   perpetrate some type of massive fraud scheme.

16        Defendant's history and characteristics are also

17   aggravating.  His criminal history category is a well-deserved

18   3, which arguably under-represents the likelihood that he will

19   commit future crimes.

20        He has been incarcerated since 1994, but he has prior

21   convictions resulting in incarcerations for various periods of

22   time from 1979, 1980, 1982, and 1987.  That he so willingly

23   became involved in this crime establishes that he certainly has

24   not been rehabilitated and continues to pose a danger to the

25   community.  That he involved one or more of his children in his

1    criminal activity is especially troublesome.

2            In addition, his refusal to admit the nature and

3    extent of his participation in the crime suggests that he's not

4    fully accepted responsibility.  I see nothing to suggest a

5    low-end sentence is appropriate, but in light of the

6    government's recommendation, I will impose that sentence anyway.

7            And I note that the original recommendation was that

8    the sentence should run concurrent to Mercadel's

9    previously-imposed sentence.  The probation officer has since

10   indicated that that was a typographical error.  Even if that had

11   been the probation officer's recommendation, I would not have

12   followed it.

13           While concurrent or partially concurrent sentences

14   make some sense in some cases, such as when the conduct overlaps

15   or there's a relevant conduct issue, a concurrent sentence here

16   would be totally illogical and bad policy.  If defendants

17   serving a federal sentence can commit totally unrelated crimes

18   while still incarcerated on the first crime and receive not even

19   one day extra for the second crime, there would be no

20   insensitive whatever not to commit further crimes while

21   incarcerated, and that would make prisons significantly more

22   dangerous than they already are, and only a consecutive sentence

23   will afford adequate deterrence for criminal conduct by other

24   prisoners and promote the other goals of sentencing.

25           I will now state the sentence, but counsel will have a

final chance to make legal objections before sentence is
imposed.

       Does counsel know of any reason why sentence should
not now be imposed?

       MS. FERNANDEZ:  No, your Honor.

       MR. EAGLIN:  No, your Honor.

       THE COURT:  I find that the following sentence is
reasonable and is sufficient, but is no greater than necessary,
to comply with the purposes stated in 18 United States Code
Section 3553(a).

       It's ordered that the defendant shall pay to the
United States a special assessment of $100, which is due
immediately.  Any unpaid balance shall be due during the period
of imprisonment at the rate of not less than $25 per quarter and
pursuant to the Bureau of Prisons Inmate Financial
Responsibility Program.

       All fines are waived as the Court finds that the
defendant has established that he's unable to pay and is not
likely to become able to pay a fine.

       Pursuant to the Sentencing Reform Act of 1984, it's
the judgment of the Court that the defendant, Antoine Michael
Mercadel, is committed on Count 1 of the Indictment to the
custody of the Bureau of Prisons to be imprisoned for a term of
46 months.  This sentence shall run consecutively to the
sentence imposed in United States District Court for the Eastern

```
 1   District of Washington, Docket No. CR 94-260-WFN.
 2           On release from imprisonment, the defendant shall be
 3   placed on supervised release for a term of three years under the
 4   following terms and conditions:
 5           One, the defendant shall comply with the rules and
 6   regulations of the U.S. Probation Office and General Order
 7   05-02;
 8           Two, the defendant shall refrain from any unlawful use
 9   of a controlled substance.  The defendant shall submit to one
10   drug test within 15 days of release from imprisonment and at
11   least two periodic drug tests thereafter, not to exceed eight
12   tests per month as directed by the probation officer;
13           Three, during the period of community supervision, the
14   defendant shall pay the special assessment in accordance with
15   this judgment's orders pertaining to such payment;
16           And, four, the defendant shall cooperate in the
17   collection of a DNA sample.
18           The defendant is remanded to the custody of the U.S.
19   Marshal.
20           Does either counsel have anything further?
21           MS. FERNANDEZ:  Your Honor, the government would move
22   to dismiss Counts 2 and 3 of the Indictment as to this defendant
23   only.
24           THE COURT:  Granted.  Thank you.
25           MR. EAGLIN:  Yes, your Honor.  We would ask for a
```

```
 1    judicial recommendation that defendant be designated

 2    specifically to Terminal Island.

 3              THE COURT:  I will make that recommendation.

 4              The statement of reasons shall be included in the

 5    commitment order and judgment and shall be provided to the

 6    probation office, the sentencing commission, and the bureau of

 7    prisons.  A complete copy of the presentence report and any

 8    additions, corrections, or changes shall be provided to the

 9    bureau of prisons and the sentencing commission.  Any other

10    copies of the report and related materials shall remain

11    confidential.  If an appeal is taken, counsel on appeal shall

12    have access to report.

13              Sir, you have a right to appeal your conviction if you

14    believe that your guilty plea was somehow unlawful or

15    involuntary or if there was some other fundamental defect in the

16    proceedings that was not waived by your guilty plea.  You also

17    have the right to appeal your sentence under some circumstances,

18    particularly if you think your sentence is contrary to law.

19              I indicated I would make the recommendation to

20    Terminal Island.  Considering the nature of this charge, I think

21    the Terminal Island officials may have a different view.  So

22    certainly I would defer to them and not suggest that my

23    recommendation should supersede their independent evaluation.  I

24    don't think it ever does anyway, but I'll just point that out

25    for the record.
```

1            A defendant may waive his appeal rights as part of a

2  plea agreement, and you have entered into a plea agreement that

3  waives some or all of your right to appeal the sentence itself.

4  Such waivers are generally enforceable.  If you believe the

5  waiver is unenforceable, you can present that theory to the

6  court of appeals.  You have also preserved your right to seek

7  review of my denial of your motion to dismiss the Indictment.

8  With few exceptions, a notice of appeal must be filed within 14

9  days of judgment being entered.

10            Do you understand that, sir?

11            THE DEFENDANT:  Yes.

12            THE COURT:  If you're unable to afford a transcript of

13  the record in this case, one will be provided at government

14  expense.  If you're unable to pay the cost of an appeal or a

15  filing fee, you may apply for leave to appeal in forma pauperis.

16  If you do not have counsel to act on your behalf and if you

17  request it, the clerk of the court will prepare and file a

18  notice of appeal on your behalf.  You must make that request

19  within 14 days.  The notice of appeal must designate the

20  judgment or order appealed from and the fact that you're

21  appealing to court of appeals.  It should designate the portion

22  of the proceedings not already on file that you deem necessary

23  for the reporter to include.

24            Anything else?

25            MR. EAGLIN:  Nothing from the defense, your Honor.

1            MS. FERNANDEZ:  No, your Honor.

2        THE COURT:  Thank you.

3            (Proceedings adjourned at 9:38 a.m.)

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2


 3     COUNTY OF LOS ANGELES )
                             )
 4     STATE OF CALIFORNIA   )

 5


 6


 7              I, Pamela A. Batalo, Federal Official Realtime Court

 8     Reporter, Registered Professional Reporter, in and for the

 9     United States District Court for the Central District of

10     California, do hereby certify that pursuant to Section 753,

11     Title 18, United States Code, that the foregoing is a true and

12     correct transcript of the stenographically reported proceedings

13     held in the above-entitled matter and that the transcript page

14     format is in conformance with the regulations of the Judicial

15     Conference of the United States.

16


17
       Date:  April 9, 2013
18


19


20
       /s/ Pamela A. Batalo
21     Pamela A. Batalo, CSR No. 3593, FCRR, RMR
       Federal Official Court Reporter
22


23


24


25
```